No. 24-10594

# In the United States Court of Appeals for the Fifth Circuit

Marcus Thornton,

*Plaintiff-Appellant,*

*v.*

University of Texas Southwestern Medical Center School of Medicine,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
3:22-CV-02079

## BRIEF FOR DEFENDANT-APPELLEE

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Ralph Molina
Deputy First Assistant
Attorney General

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 463-2120
Fax: (512) 320-0667

James Lloyd
Deputy Attorney General for Civil
  Litigation

Kimberly Gdula
Chief, General Litigation Division

Jameson C. Joyce
Assistant Attorney General
Jameson.Joyce@oag.texas.gov

Counsel for Defendant-Appellee
University of Texas Southwestern
Medical Center

# CERTIFICATE OF INTERESTED PERSONS

No. 24-10594

Marcus Thornton,

*Plaintiff-Appellant*,

*v.*

University of Texas Southwestern Medical Center School of Medicine,

*Defendant-Appellee.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellee, as a governmental party, need not furnish a certificate of interested persons.

/s/ Jameson C. Joyce
Jameson C. Joyce
*Counsel of Record for Defendant-Appellee*
*University of Texas Southwestern Medical Center*

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Marcus Thornton ("Thornton") has requested oral argument. Appellee University of Texas Southwestern Medical Center School of Medicine ("UTSMC") does not believe oral argument is necessary in this case, as the briefing amply demonstrates that Thornton's claims were dismissed on grounds that have been authoritatively decided. The facts and legal arguments are not complex and have been adequately presented in the briefs, so oral argument will not significantly aid in deciding this case. However, if the Court determines that oral argument would be helpful, UTSMC requests to participate to answer the Court's questions.

# TABLE OF CONTENTS

Certificate of Interested Persons .................................................................. i

Statement Regarding Oral Argument ........................................................... ii

Introduction ...................................................................................................... 1

Statement of Jurisdiction ............................................................................... 2

Issues Presented ............................................................................................... 3

Statement of the Case ..................................................................................... 4

    I.    Factual Background ............................................................... 4

    II.    Procedural Background.......................................................... 6

Summary of the Argument.............................................................................. 9

Standard of Review .........................................................................................11

Argument ......................................................................................................... 12

    I.    The district court properly dismissed Thornton's discrimination claim because he failed to allege facts showing he was treated differently than anyone else, let alone anyone similarly situated, who failed to return from leave without authorization. .............................. 12

        A.    Well-established law requires claimants relying on circumstantial evidence to demonstrate plausibility by alleging some facts that support a prima facie case under *McDonnell Douglas*. ................................. 12

        B.    Thornton omitted *any* factual allegations about his comparators beyond the legal conclusion that they were similarly situated and outside his class. ...........................15

        C.    Thornton's concession that he requires discovery to ascertain the existence of his alleged comparators both confirms that his pleadings are inadequate, and contradicts *Twombly* and *Iqbal*. ................................. 27

D.    The Amended Complaint confirms that Thornton was not qualified for his position. ............................................ 29

II.    The district court properly dismissed Thornton's retaliation claim because he alleged no facts allowing an inference that his latest grievance was a but-for cause of his termination. ......................................................................... 30

A.    The district court applied the appropriate scrutiny by ascertaining the temporal proximity, then looking for "any other facts" and finding none. ...................... 33

B.    Thornton allegedly filed many grievances over multiple years yet received no discipline, which undermines his claim. .............................................. 38

Conclusion .................................................................................... 38

Certificate of Service .................................................................... 40

Certificate of Compliance ............................................................. 40

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Wells Fargo Bank, N.A.,*
    867 F.3d 593 (5th Cir. 2017) ................................................................11

*Alkhawaldeh v. Dow Chem. Co.*,
    851 F.3d 422 (5th Cir. 2017) .............................................................. 19

*Angus v. Mayorkas*,
    No. 22-50600, 2023 WL 3918986 (5th Cir. June 9, 2023) .................................. 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................. passim

*Balderas v. Southside Indep. Sch. Dist.*,
    No. 516CV00239OLGRBF, 2018 WL 912287 (W.D. Tex. Feb. 14, 2018)......... 37

*Bekkem v. Wilkie*,
    915 F.3d 1258 (10th Cir. 2019) ........................................................21, 23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................ 9, 11, 27, 28

*Besser v. Tex. Gen. Land Office*,
    834 Fed. Appx. 876 (5th Cir. 2020) ............................................. 32, 34

*Briceno-Belmontes v. Coastal Bend Coll.*,
    No. 2:20-CV-00114, 2022 WL 673854 (S.D. Tex. Mar. 5, 2022)..................... 26

*Chhim v. Univ. of Tex. at Austin*,
    836 F.3d 467 (5th Cir. 2016)........................................................ 13, 19

*Cicalese* and *Swierkiewicz v. Sorema N.A.,*
    534 U.S. 506 (2002) ....................................................................... 21

*Cicalese v. The Univ. of Tex. Med. Branch*,
    No. 3:17-cv-00067, F. Am. Compl. (N.D. Tex. July 24, 2017) ........................... 25

*Cicalese v. Univ. of Tex. Med. Branch*,
    924 F.3d 762 (5th Cir. 2019) ................................................. 13, 19, 25

*Clark Cty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001)...................................................................... 30, 31, 34

*Coleman v. Ct. of App. of Md.*,
    566 U.S. 30, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012) ..................................... 21

*Coleman v. Md. Ct. of App.*,
    626 F.3d 187 (4th Cir. 2010)............................................................... 21

*Crenshaw-Logal v. City of Abilene*,
    436 F. App'x 306 (5th Cir. 2011)......................................................... 28

*Farooq v. City of New York*,
    No. 20-3185, 2022 WL 793117 (2d Cir. Mar. 16, 2022)...................................... 21

*Ganheart v. Brown*,
    740 F. App'x 386 (5th Cir. 2018) ........................................................ 35

*Gilliam v. U.S. Dept. of Veterans Affairs*,
    822 F. App'x 985 (11th Cir. 2020) ....................................................... 36

*Harris Cty. Tex. v. MERSCORP Inc.*,
    791 F.3d 545 (5th Cir. 2015) .............................................................. 11

*Hopkins v. Wayside Schools*,
    No.23-50600, 2024 WL 3738478 (5th Cir. Aug. 9, 2024) ............................. 18, 26

*Ingram v. Ark. Dept. of Correction*,
    91 F.4th 924 (8th Cir. 2024)................................................................ 21

*Lawrence v. Int'l Bus. Mach. Corp.*,
    No. 12CV8433(DLC), 2017 WL 3278917 (S.D.N.Y. Aug. 1, 2017).................... 35

*Leal v. McHugh*,
    731 F.3d 405 (5th Cir. 2013) ............................................................. 35

*Lekettey v. City of N.Y.*,
    637 F. App'x 659 (2d Cir. 2016) ......................................................... 34

*Lewis v. City of Dallas*,
    No. 3:16-CV-0259-N, 2016 WL 11474104 (N.D. Tex. Dec. 20, 2016) ............... 24

*Lewis v. City of Union City, Georgia*,
    918 F.3d 1213 (11th Cir. 2019) ............................................................ 14

*Lively v. WAFRA Inv. Advisory Gr., Inc.*,
    6 F.4th 293 (2d Cir. 2021) .................................................................... 36

*Mayberry v. Vought Aircraft Co.*,
    55 F.3d 1086 (5th Cir. 1995) ................................................................ 38

*Miller v. Alli*,
    No. 22-12729, 2023 WL 7923888 (11th Cir. Nov. 16, 2023) ............... 21

*Moini v. Univ. of Tex. at Austin*,
    832 F. Supp. 2d 710 (W.D. Tex. 2011) ................................................. 31

*Moss v. Harris Cty. Constable, Precinct One*,
    851 F.3d 413 (5th Cir. 2017) ................................................................ 29

*N.L.R.B. v. Collier*,
    553 F.2d 425 (5th Cir. 1977) ................................................................ 14

*Newbury v. City of Windcrest, Tex.*,
    991 F.3d 672 (5th Cir. 2021) ................................................................ 32

*Okwo v. Houston Methodist the Woodlands*,
    No. 22-20457, 2023 WL 1256576 (5th Cir. Jan. 31, 2023) ............ 14, 20

*Olivarez v. T-mobile USA, Inc.*,
    997 F.3d 595 (5th Cir. 2021) ........................................................... 18, 26

*Pauwels v. Allied Pilots Ass'n*,
    No. 4:23-CV-00851-O, 2024 WL 628847 (N.D. Tex. Feb. 14, 2024) ......... 24

*Plotkin v. IP Axess Inc.*,
    407 F.3d 690 (5th Cir. 2005) ........................................................... 11, 23

*Robinson v. Our Lady of the Lake Reg'l Med. Ctr., Inc.*,
    535 Fed. Appx. 348 (5th Cir. 2013) ..................................................... 32

*Roff v. Low Surgical & Med. Supply, Inc.*,
    No. CV033655(SJF)(JMA), 2004 WL 5544995 (E.D.N.Y. May 11, 2004) ....... 24

*Russell v. Univ. of Tex. of Permian Basin*,
    234 F. App'x 195 (5th Cir. 2007) ..................................................... 32

*Salem v. Monsanto Co.*,
    No. CV 17-11646, 2018 WL 3046577 (E.D. La. June 19, 2018) ......................... 24

*Strong v. Univ. Healthcare Sys., L.L.C.*,
    482 F.3d 802 (5th Cir. 2007)................................................ 30, 31, 34

*Tampa Times Co. v. N.L.R.B.*,
    193 F.2d 582 (5th Cir. 1952) .............................................................31

*Taylor v. Acxiom Corp.*,
    612 F.3d 325 (5th Cir. 2010)................................................................11

*Teamer v. Napolitano*,
    No. CIV.A. H-11-1808, 2012 WL 1551309 (S.D. Tex. May 1, 2012) ................. 24

*Thomas v. Dall. Indep. Sch. Dist.*,
    No. 2024 WL 2874367 (5th Cir. June 7, 2024) ................................... 24

*Torch Liquidating Tr. v. Stockstill*,
    561 F.3d 377 (5th Cir. 2009) ...................................................... 28

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
    570 U.S. 338 (2013) ......................................................................... 30

*Vinson v. Koch Foods of Alabama, LLC*,
    No. 2:12-CV-1088-MEF, 2013 WL 5441969 (M.D. Ala. Sept. 27, 2013) .......... 24

*Wadley v. Kiddie Acad. Int'l, Inc.*,
    No. CV 17-05745, 2018 WL 4732479 (E.D. Pa. Oct. 1, 2018) ........................... 24

*Walmart, Inc. v. U.S. Dept. of Justice*,
    21 F.4th 300 (5th Cir. 2021) ............................................................ 29

*Wiggins v. Universal Prot. Serv., LLC*,
    No. 23-1054, 2023 WL 5014082 (3d Cir. Aug. 7, 2023) ..................................... 21

*Williams v. Genesis Energy, LLC*,
    No. CV 20-35-JWD-EWD, 2021 WL 1227873 (M.D. La. Mar. 31, 2021) ......... 24

*Zinnah v. Lubbock State Supported Living Center*,
   No. 23-10242, 2023 WL 7314350 (5th Cir. Nov. 6, 2023) .......................17, 26, 28

**Statutes**

28 U.S.C. § 1291 ..................................................................................... 2

28 U.S.C. § 1331 ..................................................................................... 2

29 U.S.C. § 2612(a)(1)(D) ...................................................................... 29

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................... 7

Fed. R. Civ. P. 12(b)(6) ....................................................................... 7, 36

N. D. Tex. L.R. 83.10(a) .......................................................................... 7

N.D. Tex. L. R. 83.10 ............................................................................. 7

## Introduction

This case is about whether Thornton has plausibly alleged that his termination was a result of race discrimination and retaliation under Title VII, after the district court afforded him multiple opportunities to fix deficiencies in his complaint.

Decided on the pleadings, the facts and issues are straightforward and drawn entirely from Thornton's Amended Complaint: Thornton went on FMLA leave; failed to return when that leave expired; never communicated with his director until the director sent him a termination notice; told UTSMC he had not been medically cleared; then told his director he "had a doctor's appointment" to return to work; then requested an accommodation to return to work, albeit without specifying *what* the requested accommodation was, on November 13, 2017. He was terminated for failing to return to work after his FMLA leave expired.

As the district court recognized, and his Brief effectively concedes, Thornton's claims failed because he relied on threadbare legal conclusions to support the theory that Thornton was treated differently than any other employee in a similar scenario. He makes no allegations that a similarly situated individual failed to return from medical leave in a timely fashion, failed to *ever* provide a return to work certification from a physician, but was not terminated. There was, accordingly, no basis to reasonably infer that he was terminated due to his race or any protected activity.

This Court should affirm.

# STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291. The district court entered a final judgment on May 29, 2024. ROA.241. Thornton timely filed a notice of appeal on June 28, 2024. ROA.248.

## Issues Presented

1.  Can the formulaic recitation that a claimant "was treated differently and less favorably . . . than other similarly situated employees that were not" part of his group sustain a Title VII discrimination claim without any factual detail concerning the circumstances or identities of the alleged comparators?

2.  Do allegations that a supervisor knew about protected activity then terminated an employee five months later after the employee failed to return from leave plausibly allow a court to infer but-for causation in a Title VII retaliation case?

## Statement of the Case

### I.  Factual Background

The district court's opinion and order accurately summarized Thornton's Amended Complaint. ROA272-79. UTSMC hired Thornton as a Research Associate on June 15, 2015. ROA.142.  He devotes several paragraphs of his Amended Complaint to discussing his daily interactions with a former female manager, Norma Anderson. "For over a year," (ROA.142), Thornton allegedly filed "several complaints" against Ms. Anderson due to perceived minor slights like hiding a lab coat, failing to order supplies, and refusing to release work assignments, though he does not allege these slights were racially motivated, nor does he clarify with whom he filed these complaints. ROA.142. On June 22, 2016, Thornton alleges he complained because he "disagreed with the scores he received [on his evaluation appraisal]. . . ." ROA.142. Per Thornton, several of his internal complaints in early 2017 consisted of forwarding his prior internal complaints against his supervisor to other UTSMC officials because Thornton did not believe they had been properly investigated. ROA.143. He asserts that the last internal complaint he made was around June 2017. ROA.143.

On August 24, 2017, Thornton requested and received FMLA leave effective August 15, 2017 through October 30, 2017.  ROA.144.  His leave paperwork informed

him that he would be "required to present a fitness to return to work notice to be restored to employment." ROA.144.

His leave came and went. Thornton did not return. And he "did not communicate with Dr. Horton [his director] until [Dr. Horton] issued the Intent to Separate" Thornton from employment with the University. ROA.148. That correspondence came "[o]n November 9, 2017," when Thornton "received a letter from Dr. Horton as 'formal notification . . . to request administrative separation of his employment due to his 'unavailability to work.'" ROA.144.

At some unspecified point, Thornton also informed the University "that he had not been released from his doctor to return to work, but he would return as soon as he received his medical clearance." ROA.144. He did not say when that would be. *Id.* After he received his termination notice, Thornton responded by informing Dr. Horton "that he had a doctor's appointment" and wanted to return. ROA.144. The Amended Complaint does not say whether, or when, Thornton's physician ever actually cleared him to return—and as a corollary, if he ever presented the required "fitness to return to work notice" signed by a physician. *See id.*

To the contrary, according to the Amended Complaint, on November 13, 2017, Thornton submitted a "workplace accommodation request," seeking accommodations to return to work. ROA.145. This "accommodation request" only

requested disciplinary action against his supervisor. ROA.179-84. The request was denied. ROA.145.

Thornton's termination became effective November 14, 2017. ROA.145.

To try and demonstrate that this otherwise unextraordinary termination for failure to return from leave was discriminatory, Thornton alleged "he was treated differently and less favorably . . . than other similarly situated employees that were not African American," who were allegedly "allowed to return to work after presenting a 'fitness-to-return notice;' and were not terminated under similar circumstances." ROA.145-46.

To try and demonstrate that his termination was retaliatory, Thornton pointed to his litany of informal grievances, the last of which he lodged in "June 2017"—approximately six months before his termination and two months before he went on leave. ROA.147.

## II.  Procedural Background.

On August 24, 2018, Plaintiff filed an EEOC charge. ROA.141. Thornton sued UTSMC in the United States District Court Northern District of Texas-Dallas Division.  ROA.7.  Thornton contends that his termination from UTSMC constituted race discrimination and retaliation under Title VII. *See* ROA.146-49.

UTSMC moved to dismiss Thornton's claims as time-barred and, alternatively, barred by sovereign immunity, pursuant to Rule 12(b)(1) and 12(b)(6). ROA.72–87. UTSMC also noted that Thornton was in violation of Local Rule 83.10, which requires local counsel. ROA.85. *See* LR 83.10(a). The district court dismissed Thornton's claims without prejudice, permitting him to amend his complaint. ROA.132-39. Thornton subsequently filed a similarly deficient amended complaint that added additional, albeit irrelevant, details that did not address the issues pointed out by the district court. ROA.140-51. Thornton also continued to violate the Local Rules, ROA.140–51.

The district court subsequently attempted to contact Thornton without success and issued an order August 29, 2023 mandating compliance within fourteen days (14). ROA.152. Thornton requested an exception from the Local Rules (ROA.153-54), which was denied on September 6, 2023, in part because it came to the attention of the district court that Thornton's counsel was not licensed to practice in the Northern District. The district court granted Thornton an additional thirty (30) days to secure local counsel. ROA.157.

Two days after the court admonished Thornton, UTSMC again moved to dismiss his complaint, arguing Thornton had still failed to state a plausible claim for relief. ROA.158–75. However, because of Thornton's continued flouting of the Local

Rules and of the district court's warning, the court dismissed Thornton's case for a second time without prejudice. ROA.200. The district court did not rule on the merits of UTSMC's motion, but rather because Thornton had still not complied with the Local Rules. ROA.200.

Still without local counsel, Thornton motioned to reinstate his case, arguing it was due to "reasonable neglect and good faith mistake." ROA.204-208. The district court agreed, reinstating the case but ordering Thornton to comply with the Local Rules within thirty days of its order. ROA.229-31. More than two years since filing his complaint, Thornton finally complied with the Local Rules and secured local counsel on February 28, 2024. ROA.246. With these distractions resolved, the district court reviewed UTSMC's motion to dismiss on the merits, and granted UTSMC's motion, dismissing Thornton's claims with prejudice, ROA.272-80.

The district court dismissed the Amended Complaint because, as with his Original Complaint: (1) beyond identifying "other similarly situated employees that were not African American," "non-African American employees," or "non-African Americans," the Amended Complaint included no facts, however general, about other employees who received different treatment under similar circumstances. Thus, the district court dismissed the discrimination claim for failure to include sufficient facts. ROA.275–76. Regarding his retaliation claim, (2) beyond alleging

that he complained and was terminated, Thornton did not "plead any other facts that would give rise to a reasonable inference" that UT Southwestern terminated him because of his grievances rather than his failure to return from leave. ROA.277–78. As these deficiencies were also present in the Original Complaint, and Thornton failed to address them, the district court dismissed the Amended Complaint with prejudice. This appeal followed.

## Summary of the Argument

The district court properly dismissed Thornton's claim for failing to meet his burden to "state a claim to relief that is plausible on its face" under the well-established factual pleading requirements of *Iqbal* and *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As to his discrimination claim, well-established law requires claimants relying on circumstantial evidence, like Thornton, to demonstrate plausibility by alleging some facts that support a prima facie case under *McDonnell-Douglas*. Thornton, however, failed to identify or describe in even general detail any fellow employee who failed to return from leave without authorization and had their termination proceedings reversed despite the failure to receive clearance from a physician to return to work—relying instead conclusory allegations that "similarly situated" individuals existed

and received different treatment.  Thornton's concession that he requires discovery to ascertain the existence of those alleged comparators both confirms that his pleadings are inadequate and contradicts basic federal pleading standards.  It also conveniently ignores the fact that discovery was actually open in this case.

The district court properly dismissed Thornton's retaliation claim because he alleged no facts that would a court to infer that his latest grievance was a but-for cause of his termination.  The temporal proximity between his last activity and termination was five to six months, much too long to support causation on its own.  The district court then searched for "any other facts" supporting causation, and found none. ROA.277. To the contrary, the Amended Complaint establishes that Thornton rhythmically filed many grievances over multiple years, yet received no discipline. Absent any color as to why his final complaint was somehow special, his retaliation claim lacks any conceivable basis in law or logic.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's ruling on a motion to dismiss for failure to state a claim. *Taylor v. Acxiom Corp.*, 612 F.3d 325, 331 (5th Cir. 2010). The Court can affirm "on any grounds raised below and supported by the record." *Harris Cty. Tex. v. MERSCORP Inc.*, 791 F.3d 545, 551 (5th Cir. 2015).

Under Rule 8 and Rule 12, the plaintiff bears the burden to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

While courts accept factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679. That matter stripped away, the Court takes well-pleaded factual allegations to be true, and determines whether those allegations are legally sufficient to have stated a claim to relief that is plausible on its face. *Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593, 597 (5th Cir. 2017).

**A R G U M E N T**

I.  **The district court properly dismissed Thornton's discrimination claim because he failed to allege facts showing he was treated differently than anyone else, let alone anyone similarly situated, who failed to return from leave without authorization.**

The district court—after expressly acknowledging that claimants need not "provide evidence of comparators" at the pleading stage—properly dismissed Thornton's disparate treatment claim because he alleged *no* facts about his purported comparators "to permit the Court to reasonably infer that such comparators exist." ROA.275.

Repeated iterations of the legal conclusion that "similarly situated" employees outside of a claimant's group exist and were "treated differently and [more] favorably" do not, and cannot, suffice. *Id.* at 145. Contrary to Thornton's assertion, that is not a heightened pleading standard. It is *the* standard in cases involving circumstantial evidence of discrimination in this Circuit and around the country. And it is a low bar that Thornton could not clear after multiple attempts.

A.  **Well-established law requires claimants relying on circumstantial evidence to demonstrate plausibility by alleging some facts that support a prima facie case under *McDonnell Douglas*.**

Rather than identify factual content in his Amended Complaint, Thornton primarily argues (at 12) that the district court judged his pleading too harshly—tacitly conceding he has few facts to support a claim of discrimination. In reality,

pleading standards for a claim of disparate treatment discrimination under Title VII are well-established, and Thornton clearly falls short.

A plaintiff need not "submit evidence to establish a prima facie case of discrimination" at the pleading stage, but must "plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016); *see also Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019). To that end, a "plaintiff can prove discriminatory motive through either direct or circumstantial evidence." *Cicalese*, 924 F.3d at 766.

"When a plaintiff builds a case on circumstantial evidence," which Thornton now concedes he attempted in the present case, (at 4, 14–15), "a court analyzes the plaintiff's claim under the *McDonnell Douglas* framework." *Cicalese*, 924 F.3d at 766. That makes sense because "ultimately" a circumstantial claimant will "have to show" the elements of a *McDonnell Douglas* claim, *Chhim*, 836 F.3d at 470, which in this context means Thornton "must plead facts showing that he: (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Okwo v. Houston*

*Methodist the Woodlands*, No. 22-20457, 2023 WL 1256576, at *2 (5th Cir. Jan. 31, 2023) (quotations omitted).

> In shorthand, as ably summarized by the Eleventh Circuit:

> > [A]s all of us know intuitively—'[d]iscrimination consists of *treating like cases differently*' . . . By its very nature, therefore, discrimination is a comparative concept—it requires an assessment of whether 'like' (or instead different) people or things are being treated 'differently.'

*Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1222–23 (11th Cir. 2019) (quoting *N.L.R.B. v. Collier*, 553 F.2d 425, 428 (5th Cir. 1977)) (emphasis in original).

The parties, established law, and the district court thus agree on the basic framework and facts.  UTSMC terminated Thornton because he failed to return from leave.  To prove that termination was actually discriminatory, he needed to allege *facts* that, taken as true, make it plausible that others outside his class were not terminated under similar circumstances—in other words, that "like . . . people or things are being treated differently"—allowing a reasonable inference that his class had something to do with it.  *Id.*  He did not need to provide rigorous detail in that regard, but he did need to allege *some* facts to support the inference, and the question is whether the factual content in his Amended Complaint cleared that low bar.  ROA.275–76; Appellant Br. at 4, 14–15.

**B.** **Thornton omitted *any* factual allegations about his comparators beyond the legal conclusion that they were similarly situated and outside his class.**

Applying that framework, the district court properly determined that Thornton failed to state a claim because he provided no information about his alleged comparators beyond rote legal conclusions that parrot the legal elements of his case. ROA.275–76. Such conclusions do not allow the reasonable inference that there are "similarly situated employees who were treated more favorably than Thornton." ROA.275-76. More specifically, the Amended Complaint describes the following chain of events leading to his termination:

- He was a "Research Associate" of unspecified responsibilities. ROA.142;

- He requested and received FMLA leave "from August 15, 2017, through October 30, 2017." ROA.144;

- He knew in advance that he would be "required to present a fitness to return to work notice to be restored to employment." ROA.144;

- After his FMLA leave expired, he failed to return to work, and UT Southwestern began the process of terminating his employment by sending him a notice of intent to do so on November 9, 2017. ROA.144;

- He "did not communicate with Dr. Horton until [Dr. Horton] issued the Intent to Separate," but at some point affirmatively told UT Southwestern "that *he had not been released* from his doctor to return to work," but might return at some unknown date in the future. ROA.144 (emphasis added);

- *After* his termination was in motion, and two weeks after he failed to return to work, he allegedly told Dr. Horton: "that he had a doctor's appointment and that he would be returning to work." ROA.144.[1]

- On November 13, 2017, *after* allegedly saying he wanted to return, he informed the University he required an "accommodation" in order to do so. ROA.145.

In short, in his own words, Thornton went on leave. ROA.144. He never returned. ROA.144-45. He did not communicate with his Director about returning from medical leave until the Director sent a termination notice. ROA.144. He then told the University he had not been medically cleared to return. ROA.144. He received his termination notice. ROA.144. Thornton responded that "he had a doctor's appointment" and wanted to return. ROA.144. But he did not provide a signed medical release, and after several days passed after his leave expired, he was terminated for his unexcused, unavailability to work. ROA.145.

Regarding his alleged comparators, the Amended Complaint states only that they were "other similarly situated employees that were not African American," (ROA.145) and "non-African American employees," (ROA.146) who were allegedly "allowed to return to work after presenting a 'fitness-to-return notice.'" ROA.146.

---

[1] The Amended Complaint notably omits any allegation that his doctor ever actually cleared him to return, or that he ever actually presented the fitness to return notice. To the contrary, he apparently required an accommodation.

That is clearly insufficient under *Twombly* and *Iqbal*. Particularly in light of Thornton never providing a fitness-to-return notice signed by a physician.

In *Zinnah v. Lubbock State Supported Living Center*, No. 23-10242, 2023 WL 7314350 (5th Cir. Nov. 6, 2023), for example, the plaintiff hung her hat on similar allegations. She was "fired from her position as 'assistant home team leader' . . . .because she allegedly sprayed water on a resident." *Id.* at *1. And to tie her subsequent discrimination claim to an allegedly discriminatory motive, she alleged, among other things: (1) "where black employees were involved in a specific incident that also involved non-black employees . . . black employees receive harsher discipline;" (2) "that non-black employees are not disciplined or terminated for conduct that is substantially similar to conduct alleged against black employees;" (3) "[b]y firing Plaintiff" for "alleged abuse that did not involve injury to a resident," her employer "treated Plaintiff differently than non-black employees under substantially similar circumstances;" and (4) "the facially neutral basis for termination used against Plaintiff, that is, that she was confirmed for abuse, is not applied equally to black employees like Plaintiff when compared to non-black employees." *Id.* at *1–2.

This Court "agree[d] with the district court that" those allegations were "nothing but bare legal conclusions that are insufficient to state a claim of

employment discrimination." *Id.* at *2. As the Court noted, and is equally true here, claimants "need not necessarily provide names" or other defined details from a fixed list—but they need to provide *something* beyond the bare assertion that "similarly situated" people exist outside the claimant's class and received different treatment. *Id.* "They require, in short, 'factual content,'" and claimants "cannot simply rely on vague assertions with the unsubstantiated hope that discovery will later vindicate them." *Id. (*quoting *Iqbal*, 556 U.S. at 678).

Similarly in *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595 (5th Cir. 2021), this Court affirmed dismissal because the complaint failed to "plead any facts that would permit a reasonable inference" that the claimant was terminated "because of gender identity." *Id.* at 600. In particular, the Court noted "there is no allegation that any non-transgender employee with a similar job and supervisor and who engaged in the same conduct as Olivarez received more favorable treatment." *Id.*

And in the recent decision *Hopkins v. Wayside Schools*, No. 23-50600, 2024 WL 3738478 (5th Cir. Aug. 9, 2024), the Court affirmed dismissal of the plaintiff's claim "that he was subjected to race discrimination when [his employer] terminated his employment." *Id.* at *12. The Court noted again that a circumstantial claimant "must identify at least one 'similarly situated coworker outside his protected class who was treated more favorably 'under nearly identical circumstances.'" *Id.*

(quoting *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422 426 (5th Cir. 2017)).  And to do so, claimants must plausibly allege that they "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and had essentially comparable violation histories." *Id.*

As the Court observed in *Hopkins*, "we cannot, at this stage, subject [a] complaint to a 'rigorous factual or evidentiary analysis,'" but it also reaffirmed that "we can conclude that [the claimant] has not pleaded sufficient facts indicating that a similarly situated coworker was treated more favorably under nearly identical circumstances." *Id.* (quoting *Cicalese*, 924 F.3d at 767).  The claimant in *Hopkins* not only failed to identify any actual employees, he also, as here, "ha[d] not alleged that any of his similarly situated coworkers also reported financial mismanagement (or engaged in comparable conduct) and were not, like [him], subjected to hostility." *Id.*

The Court affirmed similar dismissals in *Chhim*, 863 F.3d at 471, despite the claimant attaching documentation to support his allegation that he was more qualified than his comparator, *see id.*  "Chhim's complaint contains no facts plausibly suggesting that Chhim was better or equally qualified ." *Id.* Similarly in *Okwo*, claims were dismissed because "[a]lthough Okwo alleges he was discriminated against because he is black and from Nigeria, he fails to allege any facts with regard to the

fourth element" regarding similarly situated comparators. 2023 WL 1256576, at *2. *See also Angus v. Mayorkas*, No. 22-50600, 2023 WL 3918986, at *7 (5th Cir. June 9, 2023) ("While Angus did allege that the selected candidates were outside of her protected class . . . she failed to allege any other facts as to the candidates' experience, qualifications, or other relevant attributes").

Decisions from all Circuits are in accord with that point, summarized succinctly by the Tenth Circuit:

> While we do not mandate the pleading of any specific facts in particular, a plaintiff must include enough context and detail to link the allegedly adverse employment action to a discriminatory or retaliatory motive with something besides sheer speculation . . . [A] plaintiff should have—and must plead—at least some relevant information to make the claims plausible on their face . . . it is insufficient for a plaintiff to allege, for instance, that she did not receive an employment benefit that 'similarly situated' employees received. . . A plaintiff's assertion that she is "*similarly situated*" to other employees is just a legal conclusion—*and a legal conclusion is never enough*. . . Rather, a plaintiff must allege some set of facts—not just legal conclusions—that taken together plausibly suggest differential treatment of similarly situated employees. . . Pleadings that do not allow for at least a reasonable inference of the legally relevant facts are insufficient.

*Bekkem v. Wilkie*, 915 F.3d 1258, 1274–75 (10th Cir. 2019) (affirming 12(b)(6) dismissal).[2] *Cicalese* and *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002), do not, as Thornton suggests, return federal pleading to a talismanic game of password, flinging open the doors of discovery to any claimant who can identify and follow the legal formula: "X happened to me, but not unknown others outside Y class."

Applying the appropriate framework here, as the District Court did, the Amended Complaint is plainly deficient. It omits any allegations: (1) that there are

---

[2] *See also Ingram v. Ark. Dept. of Correction*, 91 F.4th 924, 928–29 (8th Cir. 2024) (affirming dismissal where claimant identified three specific coworkers by name, rank, and race, but failed to allege how their duties were similar, or that their "conduct violated . . . policy" like the claimant's); *Miller v. Alli*, No. 22-12729, 2023 WL 7923888, at *3 (11th Cir. Nov. 16, 2023) ("she presents only conclusory allegations that '[s]imilarly situated white employees were not treated the same' and that 'a lesser experienced white attorney' was appointed as her supervisor. These are threadbare assertions. She does not explain who these white employees were, how they were similarly situated to her, *or whether they had committed similarly serious offenses*") (emphasis added); *Wiggins v. Universal Prot. Serv., LLC*, No. 23-1054, 2023 WL 5014082, at *3 (3d Cir. Aug. 7, 2023) ("while he alleged that Watson treated women preferentially, he has provided only the most general of allegations and included no allegations that his potential comparators were 'similarly situated' so as to support an inference of discriminatory scheduling") *Farooq v. City of New York*, No. 20-3185, 2022 WL 793117, at *3 (2d Cir. Mar. 16, 2022) ("Without more, these allegations raise no minimal inference of a general discriminatory practice at HHC. . . The *SAC fails to describe the qualifications or duties of the favorably treated employees, the circumstances surrounding their promotions, or even whether they were under the supervision of the same individuals* and held to identical standards as the employees in Farooq's protected class"); *Coleman v. Md. Ct. of App.*, 626 F.3d 187, 191 (4th Cir. 2010), aff'd sub nom. *Coleman v. Ct. of App. of Md.*, 566 U.S. 30, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012) ("The complaint . . . specifically identifies Broccolina as a white person who was not disciplined despite having 'outside business involvements' . . .However, the complaint fails to establish a plausible basis for believing Broccolina and Coleman were actually similarly situated or that race was the true basis for Coleman's termination . . . Absent such support, the complaint's allegations of race discrimination do not rise above speculation").

any other Research Associates who are not African American;[3] (2) who the "similarly situated" employees reported to; (3) what their duties where; (4) whether they failed to return from medical leave and missed over a week of work without any communication with their employer; (5) whether they informed UTSMC they *had not* been medically cleared to return and did not know when they would; (6) whether they received a notice of termination before they even told their Director that they wanted to return; and (7) whether they were actually medically cleared to return and presented the required release, or required accommodations and had merely scheduled a doctor's appointment like Thornton did.  There are also no names, no races, no approximate dates—no general identifying information at all.[4]

Nor does Thornton contend any such information exists.  Rather, his Brief simply avers he "has pled there exists similarly situated employees outside his protected class that were treated more favorably," and that this is "a short and plant statement that similarly situated employees exist, which is enough to allow specific

---

[3] Contrary to what he says in his brief, the only Research Associate identified in the Amended Complaint is Plaintiff himself.  ROA.142.

[4] In this respect, it is curious that Thornton had no issue identifying at least three coworkers, in addition to Dr. Horton and Ms. Anderson, by name and even by race and position across his Original, *see* ROA.10 ("Aboubakrine Sow and Frank G. Merlino, the Senior Employee Relations Representatives")," and Amended Complaints. ROA.142 ("Young-Ah's (Asian)").  He also provided a monthly chronology of his employment and many grievances. ROA.147.  But somehow, when pressed to provide at least some detail about his purported comparators, Thornton can muster nothing and requires discovery.

discovery to uncover the identity of these employees." App. Br. 15–16. Of course, parroting elements of a claim "is never enough." *Bekkem*, 915 F.3d at 1274–75; *Plotkin*, 407 F.3d at 696.

Moreover, Thornton's chronology of events is incomplete, as the District Court noted when it first dismissed his claims—a defect he failed to cure. He alleged that: UTSMC sent him a formal notification of its intent to terminate him on November 9, 2017; he responded on November 10—his first communication with Dr. Horton since August—by saying he scheduled a doctor's appointment and wanted to return to work; he made a formal accommodations request on November 13, which UTSMC denied; and he was terminated by UTSMC on November 14. (ROA.144–45). It remains unclear when, if ever, Thornton was actually cleared and presented the "fitness to return to work notice," that he concedes was required. Thornton's request for an accommodation to return to work suggests he never was. This is an additional ambiguity that further distinguishes Thornton from his alleged comparators. ROA.144-45.

Thornton did not need to provide *all* of the above information to adequately describe a comparator at the pleading stage. But as the district court held (ROA.274-

76), and the above authorities and innumerable others around the country confirm,[5]

he needed to provide *some* of it to allow a reasonable inference, based on fact rather

than conclusion, that he was terminated because of his class rather than

circumstances.  Claimants with colorable claims do so every day.  *See, e.g., Thomas*

*v. Dall. Indep. Sch. Dist.*, No. 2024 WL 2874367, at *5 (5th Cir. June 7, 2024);

*Pauwels v. Allied Pilots Ass'n*, No. 4:23-CV-00851-O, 2024 WL 628847, at *5 (N.D.

Tex. Feb. 14, 2024).  Thornton's failure to do so, and reliance on the conclusory

---

[5] *See, e.g., Wadley v. Kiddie Acad. Int'l, Inc.*, No. CV 17-05745, 2018 WL 4732479, at *5 (E.D. Pa. Oct. 1, 2018) ("She simply added the conclusory statement that 'similarly situated coworkers were permitted to leave work to take their children to the doctor without having to provide a doctor's note' . . . *[t]hat obviously isn't good enough*") (emphasis added); *Roff v. Low Surgical & Med. Supply, Inc.*, No. CV033655(SJF)(JMA), 2004 WL 5544995, at *5 (E.D.N.Y. May 11, 2004) ("With respect to plaintiff's allegation that her vacation request was denied, she identifies only one employee whose request for leave was granted, but she fails to allege that she was otherwise similarly situated in all material respects with that other individual"); *Vinson v. Koch Foods of Alabama, LLC*, No. 2:12-CV-1088-MEF, 2013 WL 5441969, at *4 (M.D. Ala. Sept. 27, 2013) ("In her complaint, Vinson alleges only that '[w]hite employees in Human Resources were paid substantially more than Plaintiff'' . . . This allegation is the precise type of 'formulaic recitation of the elements of a cause of action' that will not suffice under *Twombly/Iqbal*"); *Lewis v. City of Dallas*, No. 3:16-CV-0259-N, 2016 WL 11474104, at *4 (N.D. Tex. Dec. 20, 2016) ("A bare-bones allegation that the City treated Lewis less favorably than similarly situated nonblack employees will not suffice"); *Williams v. Genesis Energy, LLC*, No. CV 20-35-JWD-EWD, 2021 WL 1227873, at *6 (M.D. La. Mar. 31, 2021) ("Oris' assertion that he 'was paid less money for the same job title [than] similarly situated white employees were paid' is conclusory and unsupported by factual allegations in the *Complaint*"); *Salem v. Monsanto Co.*, No. CV 17-11646, 2018 WL 3046577, at *5 (E.D. La. June 19, 2018) ("Salem has not pled that these individuals held the same or similar responsibilities, shared the same supervisor, or the ultimate decision maker regarding the employment status was the same"); *Teamer v. Napolitano*, No. CIV.A. H-11-1808, 2012 WL 1551309, at *10 (S.D. Tex. May 1, 2012) ("even if the court accepts Plaintiff's allegation about the female, it does not allege sufficient facts to state a claim for disparate treatment because, given his attendance problems, Plaintiff is not similarly situated to the female employee").

assertion that similarly situated employees outside his class exist (ROA.146), demanded dismissal.

While sparse and superficially applied, a short survey of Thornton's cited authorities on this point also confirms his argument has no legal footing. In *Cicalese*, the claimants provided 188 paragraphs of specific factual allegations regarding the directly discriminatory comments and actions of the supervisors reported to. *See Cicalese v. The Univ. of Tex. Med. Branch*, No. 3:17-cv-00067, F. Am. Compl. (N.D. Tex. July 24, 2017), ECF No. 15. Among other things, the Dean allegedly said directly to the couple: "You should go back to Italy," the department chair said, "he did not care about 'these Italians,'" and on multiple occasions, "referred to 'stupidity' and failure to 'understand[] a situation' as an 'Italian thing.'" *Cicalese*, 924 F.3d at 765. This Court found that those ample allegations of direct "anti-Italian bias" in addition to other direct employment actions and subsidiary circumstantial allegations about "American Doctors who [were] less qualified," satisfied federal pleading standards—though even all that detail was "a close call." *Id.* at 768.

Thornton's Amended Complaint is comparatively lacking. He complains about a discrete act—his termination—by Dr. Horton. ROA.144-45. And that termination came after Thornton concededly failed to return from FMLA leave in violation of policy. ROA.145. This is not, as in *Cicalese*, a case with multiple

allegations of explicit bias by the decisionmaker at issue, it is a case about whether Thornton was treated differently than others.  Moreover, while Thornton devotes several paragraphs of his Amended Complaint to perceived minor slights from Ms. Anderson like hiding a lab coat, failing to order supplies, and refusing to release work assignments, these all preceded his termination by at least a year, lack any direct racial connotation, and, most importantly, do not involve Dr. Horton.  ROA.142-43. The complaint before this Court and the district court is different in kind and quality that in *Cicalese*.  More to the point, *Zinnah,* 2023 WL 7314350, *Olivarez*, 997 F.3d at 600, and *Hopkins*, 2024 WL 3738478, all make clear that *Cicalese* clearly did not endorse the use of legal conclusions in place of facts.

Thornton's reliance (at 16-18, 20) on *Briceno-Belmontes v. Coastal Bend Coll.*, No. 2:20-CV-00114, 2022 WL 673854 (S.D. Tex. Mar. 5, 2022) is similarly inapplicable. The plaintiff in that case specifically named her purported comparators. *Id.* at *4. Thus, there was at least a plausible inference—more than Thornton's hypothetical "non-African Americans"—that the plaintiff had comparators outside of her protected class.

**C. Thornton's concession that he requires discovery to ascertain the existence of his alleged comparators both confirms that his pleadings are inadequate, and contradicts *Twombly* and *Iqbal*.**

Thornton argues, without citing to any supporting law, that he should be permitted to conduct discovery because otherwise he has been "denied the opportunity to gather evidence and depose decisionmakers to prove that improper criteria was used to make the decision to terminate his employment." Appellant Br. at 15. Far from an argument for reversal, his repeated exhortation that the "other similarly situated employees that were not African American . . . will be identified through discovery," further confirms that his claims were properly dismissed and ought not have been brought. Appellant Br. at 9, 15. The argument is a tacit concession that he has no idea who these alleged comparators are or if they actually exist, and flips procedure on its head.

Setting aside the several opportunities Thornton was afforded to replead, both due to his deficient pleadings and inability to comply with Local Rules, Thornton incorrectly asserts he was held to a "rigorous inquiry at the pleading stage." Appellant's Br. at 15. In reality, Thornton was held to the lowest of standards when he was asked to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Not only was Thornton properly held to

this standard, after failing to meet it, he was permitted to amend. ROA.138. Despite this opportunity, he failed again. ROA.276

It is basic, black-letter law that "[t]he role of discovery . . . is to find support for properly pleaded claims, not to find the claims themselves." *Torch Liquidating Tr. v. Stockstill*, 561 F.3d 377, 392 (5th Cir. 2009). *Twombly* and *Iqbal* recognize that "[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process," *Twombly*, 550 U.S. at 559, and that "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

In other words, Thornton's "argument puts the cart before the horse." *Crenshaw-Logal v. City of Abilene*, 436 F. App'x 306, 309 (5th Cir. 2011). He "does not get discovery until [he] pleads a plausible claim (*id.*), and as this Court held in *Zinnah*, claimants "cannot simply rely on vague assertions with the unsubstantiated hope that discovery will later vindicate them." 2023 WL 7314350, at *2. Thornton's argument on this point misapprehends federal law and pleading standards, and advocates a dysfunctional, long-discarded policy.

All that having been said, Thornton conveniently neglects to inform this Court that he *could have conducted discovery in this case* before the first motion for judgment on the pleadings was granted. He failed to do so. The district court entered a

scheduling order on December 12, 2022, that provided discovery deadlines, but Thornton took no action toward conducting the discovery he now claims is needed for him to plausibly allege a race discrimination claim.

### D.  The Amended Complaint confirms that Thornton was not qualified for his position.

Other defects supported dismissal of Thornton's race discrimination claim as well, and "this court may affirm dismissal for any reason supported by the record." *Walmart, Inc. v. U.S. Dept. of Justice*, 21 F.4th 300, 307 (5th Cir. 2021).  More specifically, the Amended Complaint establishes that Thornton was not qualified for his position at the time of termination because he had first informed UT Southwestern that he could not return to work, and later averred that he required accommodations to do so.[6] *See Moss v. Harris Cty. Constable, Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017) (holding a person is not qualified for the position held prior to a leave of absence if the physician has not released the employee to return to work at the time of the termination); 29 U.S.C. § 2612(a)(1)(D) (when an employee requests FMLA leave they are necessarily asserting that they have a "serious health condition that makes the employee unable to perform the functions of the position of such employee").  An employee who tells his employer he cannot return, and then

---

[6] Thornton has not alleged a disability discrimination or failure to accommodate claim.

requests accommodations that were denied, cannot be qualified for his position to sustain a Title VII claim.

## II. The district court properly dismissed Thornton's retaliation claim because he alleged no facts allowing an inference that his latest grievance was a but-for cause of his termination.

The district court properly dismissed Thornton's retaliation claim for essentially the same reason as the discrimination claim—he failed to allege any facts plausibly linking his termination to something other than his failure to return from leave, specifically to any protected activity.

"Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). While that certainly requires the decisionmaker to know about the protected activity, the simple fact that an employee complained to a supervisor and later experienced discipline is, of course, not enough on its own. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (even "presum[ing]" supervisor knowledge could not sustain the claim); *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). This limitation recognizes that "*[p]ost hoc ergo propter hoc*—a principle which states if one event occurs after another, the second event must have been caused by the first" is a both a common "theme" of retaliation claims and "a well-known logical fallacy" that cannot sustain a pleading. *Moini v.*

*Univ. of Tex. at Austin*, 832 F. Supp. 2d 710, 714 (W.D. Tex. 2011); *see also Tampa Times Co. v. N.L.R.B.*, 193 F.2d 582, 583 (5th Cir. 1952) ("The inference that he was discharged on account of such activities may not be drawn merely from the fact that the activities preceded the discharge. Post hoc ergo propter hoc is not sound logic"). To indulge such pleadings "would unnecessarily tie the hands of employers" by effectively immunizing employees from any discipline after a protected activity. *Strong*, 482 F.3d at 808.

That said, the temporal proximity between a protected activity and an adverse employment action can be relevant to the causation analysis, but this Court has repeatedly emphasized that "temporal proximity alone is insufficient to prove but for causation." *Strong*, 482 F.3d at 808; *see also Breeden*, 532 U.S. at 273–74 (citing with approval cases in which three-month and four-month periods were found insufficient to show causal connection).

To summarize the law of causation under Title VII, the simple facts of activity-knowledge-discipline are not enough on their own. A short gap between protected activity and an adverse event can provide strong evidence of retaliation, but more is often required. *Strong*, 482 F.3d at 808. And with each day that passes, the inferable causal link between protected activity and employment action wanes until the temporal proximity ceases to have any value at all sometime around the two-

to-three-month mark. *See Besser v. Tex. Gen. Land Office*, 834 Fed. Appx. 876, 885 (5th Cir. 2020) (observing that "The United States Supreme Court has favorably cited a decision holding that three months is not within the 'very close' requirement" and holding that "two and one-half months" does not establish causation). Certainly, "[f]ive and six month gaps" like that present here "are not 'very close' for the purpose of establishing a causal link," and effectively contribute nothing to a claimant's causation theory at all. *Robinson v. Our Lady of the Lake Reg'l Med. Ctr., Inc.*, 535 Fed. Appx. 348, 354 (5th Cir. 2013).[7] "[S]omething more" than the mere sequence of discipline is required to allow reasonable inference that but for some protected activity, the adverse action in question would not have occurred. *Gilliam v. U.S. Dept. of Veterans Affairs*, 822 F. App'x 985, 991 (11th Cir. 2020).

---

[7] *See also Newbury v. City of Windcrest, Tex.*, 991 F.3d 672, 679 (5th Cir. 2021) ("a five month lapse is not close enough ... to establish the causal connection element of a prima facie case of retaliation"); *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 206 (5th Cir. 2007) ("We cannot infer causation in this case because the temporal proximity evidence shows a six-month gap").

**A. The district court applied the appropriate scrutiny by ascertaining the temporal proximity, then looking for "any other facts" and finding none.**

The district court followed that framework to the letter, and properly dismissed Thornton's retaliation claim. First, it observed that the timeline between Thornton's last protected activity and his termination was at least five (maybe six) months, which "is too great a lapse in time to give rise to a presumption of causation based on temporal proximity" alone. ROA.277. That is, of course, an accurate statement and application of law.

Next, the district court dutifully looked for "any other facts" in the Amended Complaint "that would give rise to a reasonable inference of causation." ROA.277. The court found only "the fact that the [UTSMC] employee that terminated [Thornton's] employment had knowledge of his complaints," which "without more, does not allow the Court to infer that [Thornton] was terminated because [] he engaged in protected activity, especially where five months elapsed," and he was allowed to go on leave. ROA.277–78. That was again a flawless application of governing law.

Thornton provides no authority to the contrary. For all the prevaricating over evidentiary standards advanced in his Brief, his arguments can be dispatched quickly. His primary argument is flawed *ab initio*. He contends "he made multiple internal

complaints," that "he alleges the decisionmakers had knowledge of his protected activity," and that it "is enough to infer that the employer had knowledge of Thornton's protected activity." Appellant Br. at 18. Of course, as the district court held, knowledge and sequence are necessary but not sufficient to establish but-for causation on their own. *Breeden*, 532 U.S. at 273; *Strong*, 482 F.3d at 808.

He then pivots, attempting to shorten the timeline between events by measuring "the proximity of [Thornton]'s internal complaint in June 2017" to his going on "FMLA leave in August 2017." Appellant Br. at 20. Of course, being granted FMLA leave is not, and cannot be, an adverse employment action under Title VII. But even assuming *arguendo*, even a two-month gap does not allow causation to be inferred, certainly not on its own. *Besser,* 834 F. App'x at 885.

Thornton finally arrives at the thrust of the issue. The Amended Complaint concedes that Thornton was terminated because he failed to return after his leave, and acknowledges he needs to establish that his termination "due to 'unavailability is a pretextual finding to cover up [UTSMC's] discriminatory and retaliatory actions towards Plaintiff." ROA.148.

Such an allegation on its own is insufficient to plausibly allege pretext even at the pleading stage. *See Lekettey v. City of N.Y.*, 637 F. App'x 659, 662 (2d Cir. 2016); *Lawrence v. Int'l Bus. Mach. Corp.*, No. 12CV8433(DLC), 2017 WL 3278917, at *8

(S.D.N.Y. Aug. 1, 2017) ("The SAC's conclusory assertion that Seterus's reason for terminating Lawrence employment was 'false' and a 'pretext for unlawful retaliation' are entitled to no deference on a motion to dismiss").

As discussed above, Thornton failed to plausibly allege, beyond conclusory recitations, that "Dr. Horton allowed other employees to return-to-work under the same or similar circumstances," (Appellant Br. at 21) so as to allow a reasonable inference that he was terminated due to protected activity as opposed to his failure to receive medical clearance or return from leave. The district court properly dismissed such a threadbare claim.

This Court's decision in *Ganheart v. Brown*, 740 F. App'x 386 (5th Cir. 2018), is dispositive. The claimant in *Ganheart* filed "an EEOC charge in November 2015." *Id.* at 391. Her employer demoted her "five months later." *Id.* As this Court held, the claimant "alleges no facts showing that any of her protected activities were a but-for cause of the demotion, and a five-month interval between a protected activity and an adverse employment consequence is too long to sustain a prima facie claim of causation based solely on temporal proximity." *Id.* That is precisely the situation and ruling made here. *See id.*; *see also Leal v. McHugh*, 731 F.3d 405 (5th Cir. 2013) ("We agree that [the claimant] has failed to allege a plausible causal

connection" by alleging he "participated in prior EEO complaints . . . as recently as 2006" and the decisionmaker "was his supervisor" at the time).

The Second Circuit's decision in *Lively v. WAFRA Inv. Advisory Gr., Inc.*, 6 F.4th 293 (2d Cir. 2021) also provides guidance. The claimant "allege[d], in essence, that he complained to [his employer] about [a co-worker's] comments, but received no response and was terminated five months later in retaliation." *Id.* at 307. Affirming dismissal, the court held that the claimant "alleged no facts suggesting that the reporting . . . was the 'reason' for his termination." *Id.* The five months lapse did not allow "a plausible inference of causation," and he alleged "no evidence (direct or circumstantial) of retaliatory motive based on his reporting." *Id.* 307–08. "Instead," as here, the claimant "simply asserted in conclusory fashion that 'as a result of reporting" misconduct, his employer "seized the opportunity to terminate [him] on the basis of a false accusation . . ." *Id.* Such allegations "failed to plead a plausible claim of retaliation under," and the court affirmed dismissal under Rule 12(b)(6). *Id.*

And in *Gilliam v. U.S. Dept. of Veterans Affairs*, 822 F. App'x 985 (11th Cir. 2020), the Eleventh Circuit affirmed dismissal because the claimant's allegations were "wholly generalized" making them "plainly insufficient to establish liability without something more." *Id.* at 990–91. Among other things, the allegation that a

coworker "was disciplined less harshly" failed to establish that the claimant's EEOC filing "played a role in his termination because [the coworker] is not a valid comparator." *Id.* The coworker "had a different job" and "might be reasonably held to different standards." *Id.* There were also no allegations that the two employees committed the same "acts of misconduct," or that they shared supervisors. *Id.*; *cf. Balderas v. Southside Indep. Sch. Dist.*, No. 516CV00239OLGRBF, 2018 WL 912287, at *10 (W.D. Tex. Feb. 14, 2018) (observing that allegations that "board members with whom they are politically aligned *made numerous statements to community members … regarding their intent to terminate, demote and reassign employees including the Plaintiffs,*" among other things, plausibly alleged a causal connection).

Thornton's retaliation claim suffers from substantially the same defects as the cases above. Thornton's conclusory allegations regarding knowledge and sequence cannot sustain his claim, nor can the temporal proximity between his last complaint and his termination. And, as discussed above, he failed to plausibly, factually allege any other matter suggesting he was terminated for any protected activity (e.g., that he was treated differently than others). There is nothing that allows a court to infer causation.

### B. Thornton allegedly filed many grievances over multiple years yet received no discipline, which undermines his claim.

Indeed, Thornton's allegations undermine his own claim. This Court has observed that a sustained history of grievance filing, with no history of repercussions, cuts against a finding of causation as much or more than it supports it. In *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086 (5th Cir. 1995), the plaintiff "first engaged in protected activity . . .sometime 'in the mid 1980's', and continued, with regularity, in protected activity through 1992." *Id.* at 1092. "In this regard," the Court held, "there is nothing inherently 'suspicious' about" an employment decision that "occurs at least several years after protected activity begins," and "[i]ndeed, one might argue that [such] 'timing' . . . is evidence against retaliation." *Id.*

Similarly here, Thornton's allegations establish that he rhythmically lodged complaints at an almost monthly cadence from April 2016 until June 2017, but was not terminated after any of those earlier events—per Thornton, the June complaint was, for some unspecified reason, special. ROA.147. If anything, that history actually suggests he was not retaliated against. *See Mayberry*, 55 F.3d at 1092. Thornton's theory fails as a matter of both law and logic.

## Conclusion

This Court should affirm the judgment of the district court.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Ralph Molina
Deputy First Assistant
  Attorney General

Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 463-2120
Fax: (512) 320-0667

James Lloyd
Deputy Attorney General for Civil
  Litigation

Kimberly Gdula
Chief, General Litigation Division

/s/ Jameson C. Joyce
Jameson C. Joyce
Assistant Attorney General
Jameson.Joyce@oag.texas.gov

Counsel for Defendant-Appellee
University of Texas Southwestern
Medical Center

## CERTIFICATE OF SERVICE

On November 4, 2024, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.  Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; and (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1.

/s/ Jameson C. Joyce
Jameson C. Joyce

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 8,559 words, excluding the parts of the brief exempted by Rule 32(f) and 5th Cir. R. 32.1; and (2) the typeface requirements of Rule 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Jameson C. Joyce
Jameson C. Joyce